**IN THE U.S. DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
COLUMBUS, OHIO**

| | | |
|---|---|---|
| **CADEN COX, by and through his next friend and mother, MARI COX** | : | |
| | : | |
| **Plaintiff,** | : | **JUDGE:** |
| | : | |
| **v.** | : | **CASE NO.:** |
| | : | |
| **HOCKING COLLEGE BOARD OF TRUSTEES;** | : | |
| | : | |
| **and** | : | **COMPLAINT AND DEMAND** |
| | : | **FOR JURY TRIAL** |
| **BETTY YOUNG, Individually and as President of Hocking College;** | : | |
| | : | |
| **and** | : | |
| | : | |
| **MATTHEW KMOSKO, Individually and as former Coordinator of the Student Center and Campus Recreation, and as former soccer coach of Hocking College;** | : | |
| | : | |
| | : | |
| **and** | : | |
| | : | |
| **UNKNOWN DEFENDANTS 1-5, Employees of Hocking College;** | : | |
| | : | |
| **Defendants.** | : | |

## <u>OVERVIEW</u>

This complaint arises from the disability discrimination, physical assault, and persistent verbal harassment committed by Hocking College employee, Matthew Kmosko, against Hocking College student and employee, Caden Cox ("Plaintiff") from January through May of 2022. The Hocking College Board of Trustees ("Board") and Hocking College President, Dr. Betty Young, failed to adequately and appropriately address and prevent Mr. Kmosko's egregious misconduct.

The Board and Dr. Young had knowledge of and were deliberately indifferent to such inappropriate conduct as well as Mr. Kmosko's propensity of such misconduct. Moreover, Plaintiff suffered retaliation by Dr. Young and other unknown employees of Hocking College for reporting Mr. Kmosko's conduct.

At the time of the alleged misconduct, Plaintiff was a 23-year-old student at Hocking College. As an individual with a disability, Plaintiff soared past every barrier to become the first student with Down Syndrome to play college football. His incredible story of determination and perseverance has been praised and publicized in newspapers, magazines, and on television, bringing considerable positive attention to Hocking College. Using Plaintiff's story and likeness, Hocking College has marketed the school as an inclusive institution, accessible to all students.

During his enrollment as a student, Plaintiff was also employed by Hocking College in the Student Recreation Center. In July, 2021, Mr. Kmosko became Plaintiff's supervisor. Soon after Mr. Kmosko began his persistent derogatory, discriminatory, and abusive verbal harassment of Plaintiff. This misconduct culminated in May, 2022 when Mr. Kmosko held Plaintiff at knifepoint in a campus bathroom during his work shift.

Plaintiff, with the assistance of his parents, filed several complaints with the school administrators regarding these incidents, most notably the knife incident. Despite their reporting, Hocking College failed to promptly, adequately, and responsibly investigate and manage Mr. Kmosko or ensure Plaintiff's safety.

Mr. Kmosko was recommended for hire by Dr. Young at the behest of an unknown Hocking College Board of Trustees member. Despite it running contrary to the college's hiring policy, Dr. Young denied a request from the human resources department to conduct a background check. Had

it been completed the results would have revealed a disturbing history of violence against others. Had it been completed, Mr. Kmosko would not have been hired and Plaintiff would not have suffered the trauma he did. Dr. Young and the Board failed to adhere to its own hiring policy in failing to conduct a background check. Moreover, they failed to adequately protect Plaintiff despite actual and constructive knowledge of Mr. Kmosko's abuse and harassment following reports. Plaintiff suffered unlawful discrimination on the basis of his disability by Mr. Kmosko.

Lastly, Dr. Young retaliated against Plaintiff reports of discrimination and harassment by rescinding two awards he had been selected to receive at the fall 2023 graduation ceremony.

Plaintiff has suffered and continues to suffer significant emotional trauma including anxiety, fear, depression, nightmares, and trouble sleeping as a result of the trauma he endured. He struggles on a daily basis with anxiety and sleep and mood disturbances. This trauma has been compounded by both the unfathomable failure of the Board and Dr. Young to properly respond and protect him and their retaliation against him for taking legal action.

The acts of misconduct by Defendants are violations of the federal and state law claims identified, as will be discussed in detail herein.

## JURISDICTION AND VENUE

1.     This Court has exclusive subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 insofar as this Complaint raises issues under the Fourth and Fourteenth Amendments of the United States Constitution, Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794, et seq.

2.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims asserted by Plaintiff form part of the same case or controversy as the constitutional and federal claims.

3.    Venue is proper in the Southern District of Ohio, Eastern Division, under 18 U.S.C. §1965 and 28 U.S.C. §1391(c), as the claims arise in this district and all Defendants reside or maintain a principal place of business within the district.

4.    In this civil action, it is alleged that Plaintiff was discriminated against on the basis of his disability by Defendant Matt Kmosko.

5.    It is further alleged that as a result of an omission or failure to adhere to an official policy or custom attributable to the Board, Plaintiff suffered an invasion of his right to bodily integrity, which is protected by the Fourth and Fourteenth Amendments to the U.S. Constitution. Plaintiff suffered deprivation of this right between January 2022 and May 2022, when, as a student-employee with a disability, he was subjected to multiple acts of verbal and emotional harassment by Mr. Kmosko, culminating in an assault at knifepoint.

6.    Despite a customary practice of conducting background checks on potential hires at Hocking College, Dr. Young refused to allow the former Director of Human Resources to conduct such a check on Mr. Kmosko citing her intention to hire Mr. Kmosko regardless of the circumstances as a favor to a Board member.  It can be inferred that Dr. Young and the Board were aware of Mr. Kmosko's history of violent behavior as well as his propensity of harassment as otherwise they would have conducted a proper background check per Hocking College custom. This omission or failure to adhere to custom constitutes deliberate indifference to the rights of Plaintiff. The deprivation of Plaintiff's constitutionally protected right is actionable under 42

U.S.C. §1983. The deliberate indifference attributable to the Board and Dr. Young constitutes a state-created danger actionable under 42 U.S.C. §1983.

7.      In this civil action, it is further alleged that when Plaintiff complained of and sought to take legal action in response to the Board and Dr. Young's insufficient response to the assault and discriminatory conduct, Dr. Young stripped Plaintiff of two awards he had been voted on and selected to receive at the fall 2022 graduation ceremony.  Such conduct constitutes a clear act of retaliation in response to Plaintiff's reports of discrimination and harassment, violating the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

## **PARTIES**

8.      PLAINTIFF CADEN COX, a student with Down Syndrome, was enrolled as a student at Hocking College and employed by Hocking College during the time period in which the assault and alleged discriminatory verbal and emotional harassment, the deliberate indifference of the Dr. Young and other Hocking personnel, and the retaliation by Dr. Young occurred. Plaintiff is an individual with a disability under the Americans With Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act and Ohio Revised Code § 4112.01(A)(13).

9.      DEFENDANT HOCKING COLLEGE BOARD OF TRUSTEES is a political subdivision of the state of Ohio with its administrative office and principal place of business located at 3301 Hocking Parkway, Nelsonville, Ohio 45764 in Hocking County, Ohio. The Board receives, and at all relevant times received, federal and state funding for the provision of public education and is therefore subject to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101.  Defendant is an educational institution as defined under Ohio Revised Code §4112.022.

10.     DEFENDANT DR. BETTY YOUNG was the President of Hocking College and a resident of Hocking County for all relevant periods of time herein. Dr. Young was an authorized official of the Board, acting under color of state law.

11.     DEFENDANT MATTHEW KMOSKO was an employee of Hocking College and Plaintiff's supervisor for all relevant periods of time herein. Mr. Kmosko was an authorized official of the Board, acting under color of state law.

12.     UNKNOWN DEFENDANTS 1-5 are unknown employees of the Board with actual or constructive knowledge of the Board and Dr. Young's misconduct. Moreover, these unknown employees facilitated such misconduct and participated in the hiring of Mr. Kmosko, and in stripping Plaintiff of his graduation awards.

13.     The Board, by virtue of the acts and/or omissions by Dr. Young, had actual or constructive knowledge and was deliberately indifferent to and retaliated against the assault, harassment, and discrimination complaints made by Plaintiff.

14.     Any and all acts or omissions alleged herein are attributable to the Board and its staff, faculty, and/or administrators. Such acts or omissions were done in the scope of employment and/or in furtherance of the Board's interests. All acts or omissions alleged herein are attributable to the Board as Hocking College is a school that is under the control of Board.

15.     Mr. Kmosko discriminated against Plaintiff on the basis of his disability through verbal, physical, and emotional harassment.

16.     Dr. Young and the Board were aware of such discriminatory harassment and failed to properly address it and protect Plaintiff.

17.     Dr. Young and the Board demonstrated deliberate indifference in their failure to follow Hocking College custom of performing background checks on potential hires, despite actual or constructive knowledge of Mr. Kmosko's history of criminal and violent behavior.

18.     The failure of Dr. Young and the Board to properly conduct a background check on Mr. Kmosko upon his hiring (which would have revealed a history of violent behavior), despite the recommendation and customary practice to do so constitutes a state-created danger.

19.     Dr. Young's act of stripping Plaintiff of awards he earned after she became aware of his pending legal action constitutes unlawful disability retaliation.

## FACTUAL ALLEGATIONS

### Defendant Matt Kmosko's Background and Hiring

20.     On June 29, 2021, Mr. Kmosko was hired by Hocking College as a coordinator of the Student Center and Campus Recreation, and as a soccer coach.

21.     Mr. Kmosko has several prior domestic violence charges spanning from 2010 through 2016 in the state of Florida.

22.     On information and belief, Mr. Kmosko was recommended for hire by Dr. Young and was a "direct hire" through Dr. Young's office, which was atypical.

23.     At all relevant times herein, Dr. Young was the President of Hocking College.

24.     Prior to Mr. Kmosko's hire, the former Hocking College Human Resources Director had a private meeting with Dr. Young to discuss Mr. Kmosko's hiring.  She indicated that she planned to conduct a background check on Mr. Kmosko but was expressly told not to do so by Dr. Young.  Dr. Young indicated that she needed to make this hire work because it was a favor to one of the Hocking College trustees.

25.    At the time of Mr. Kmosko's hiring, it was Hocking College policy to conduct a background check on each new prospective employee. Upon information and belief, Hocking College never conducted a background check on Mr. Kmosko.

**Mr. Kmosko's Work Performance and Harassment Complaints**

26.    Mr. Kmosko's performance and behavior during his employment at Hocking College were subject to significant concerns soon after his employment began.

27.    Mr. Kmosko's performance review dated December 14, 2021 stated that his performance fell far below expectations in every metric assessed.  The review highlighted several instances of inappropriate behavior with fellow employees as well such as texting them incessantly during non-working hours, introducing himself as "Kevin's slave," and failing to complete nearly any assigned task. **See Exhibit A, attached hereto.**

28.    Upon information and belief, Hocking College administration, including Dr. Young, failed to address any of the concerns set forth in Mr. Kmosko's performance review.

29.    Upon information and belief, Hocking College administrators, Cary Campbell, Athletic Director, and Kim Coy, the Student Employee Coordinator received regular complaints from employees and students about Mr. Kmosko's behavior during his employment.

30.     On December 14, 2021, three Hocking College student-employees made harassment complaints against Mr. Kmosko alleging violations of the College Workplace Harassment and Civility Policy.

31.    Mr. Kmosko was the supervisor of all three complainants.

32.    Complainant #1 alleged that Mr. Kmosko would text him incessantly after work hours about a random array of subjects, including, but not limited to, his own sexual encounters and past drug use.  It was also alleged that Mr. Kmosko described graphic sexual ideations about

female employees to Complainant #1 on multiple occasions, which made this complainant extremely uncomfortable. Specifically, Mr. Kmosko referred to specific female employees as 'spinners' because, in his words, "they are small enough to spin on his dick". Complainant #1 also describes incidents in which Mr. Kmosko would scream at him for not responding to his phone calls during non-working hours.

33.     Complainant #2 alleged that Mr. Kmosko used the word "retarded" in her presence, described his sexual and drug-related exploits, and made sexually inappropriate comments about other female employees.

34.     Complainant #3 alleged that Complainant #1 told her about the inappropriate comments Mr. Kmosko had made. Complainant #3 also alleges that Mr. Kmosko made consistent inappropriate comments about other co-workers and superiors.

35.     The investigation concluded with two of the three complainants reporting to a different supervisor, and the investigator and Dr. Young telling Mr. Kmosko to refrain from using inappropriate language and texting employees after work hours. Beyond that, there was no substantive changes to address their complaints or protect students and employees from further inappropriate behavior by Mr. Kmosko.

**Defendant Kmosko's Harassment of Plaintiff**

36.     Upon Mr. Kmosko's hiring, he became Plaintiff's supervisor in the Student Center at Hocking College.

37.     Mr. Kmosko consistently made abusive, derogatory, and inappropriate comments to Plaintiff and verbally and physically harassed Plaintiff a few months after his employment began. Specifically, Mr. Kmosko would consistently make derogatory slurs about individuals with Down Syndrome to Plaintiff during work hours, use the word "retarded" and degrade his abilities, and

berate and yell at Plaintiff frequently and in front of his co-workers. On several occasions, he took Plaintiff's phone and looked through it without permission. He asked Plaintiff to give him hugs. There were also instances in which he would stare at him menacingly and send aggressive text messages.

38. Hocking College and Dr. Young were given written notice of Mr. Kmosko's inappropriate behavior towards Plaintiff on at least two separate occasions.

39. In July 2021, Plaintiff's mother, Mari Cox, hand delivered a written complaint about Mr. Kmosko's conduct towards Plaintiff to the Hocking College Human Resources Department. **See EXHIBIT B, attached hereto.**

40. On January 10, 2022, Mari Cox emailed another complaint about Mr. Kmosko to Mr. Campbell and Ms. Coy requesting that Mr. Kmosko be replaced as Plaintiff's supervisor for some of the reasons identified in the first complaint. Mari Cox described a pattern of Mr. Kmosko using the term "retarded" in front of and towards Plaintiff, taking Plaintiff's phone, and putting his hands on Plaintiff inappropriately. In response, Mr. Campbell became Plaintiff's supervisor. Despite this change, Mr. Kmosko was still in direct contact with Plaintiff at the Student Center on a regular basis. **See EXHIBIT C, attached hereto.**

41. On Thursday, May 12, 2022, the persistent pattern of abusive harassment culminated when Mr. Kmosko followed Plaintiff into the men's restroom in the Student Center and threatened him with a knife.

42. During his shift, Plaintiff went into the men's bathroom to change the garbage bags. Mr. Kmosko followed Plaintiff into the bathroom, physically blocked the exit, and began to scream at him that he told him to change the trash while pointing a black-handled, silver knife at Plaintiff's chest.

43.     The Hocking College surveillance camera footage captured Mr. Kmosko walking in and out of the bathroom carrying the weapon.

44.     When Plaintiff was able to return to the front desk, shaken and scared, he received a phone call from Mr. Kmosko, who said, "Caden, I see you through the window.  Get up and do something."  Then he hung up.

45.     Plaintiff was terrified and traumatized and called his mother immediately thereafter.

46.     Since that incident, Plaintiff has continued to suffer from trauma and its manifestations, which will be detailed herein.

### Hocking College's Response to the Knife Incident

47.     On Sunday, May 15, 2022, Plaintiff's mother, Mari Cox, and brother, Zane Cox, visited Hocking College Vice President, Hannah Guada, outside her home to discuss the incident directly with her.

48.     Ms. Guada informed the Cox family that Hocking College administration was not informed of the incident. Ms. Guada advised the Coxes to report the incident to the Hocking College Police Department, which they did that same day.

49.     On Monday, May 16, 2022, the Cox family was informed that the police were pursuing criminal charges against Mr. Kmosko.  He was charged and later convicted of menacing in the Athens Municipal Court.

50.     On Tuesday, May 17, 2022, Plaintiff and his parents were questioned by Hocking College Human Resources Director, Chrystal Marcum.  Thereafter, Ms. Marcum sent her report to Dr. Young.

51.     Also on Tuesday, May 17, 2022, Mr. Kmosko arrived on campus at 7:45am for his scheduled work shift.  At this time, he was finally questioned by campus police and Ms. Marcum.

Following a two-hour meeting, Mr. Kmosko was permitted, remarkably, to return to the Student Center for his work shift.

52.     In her report, Mrs. Marcum indicated that Mr. Kmosko's personnel file did not contain any disciplinary reports or complaints about his past behavior. Despite Hocking College's written policy to retain employee records for seven years, it seems that the complaints made about Mr. Kmosko and any disciplinary records were removed or deleted. Further, his employment file still contains no record of the knife incident on May 12, 2022.

53.     Mr. Kmosko permitted to resign his position at Hocking College.

54.     On May 17, 2022, the Cox family petitioned for and were granted a Protection Order against Kmosko in the Athens County Court of Common Pleas, meant to protect Plaintiff and his family members against further abuse and harassment by Mr. Kmosko. He was also barred from campus via a "No Trespass Order" obtained by the Cox family.

55.     Two weeks after Plaintiff's assault, Dr. Young spoke with Kevin Cox and apologized for what happened to Plaintiff and assured him that everything would be reorganized in the Student Center. This reorganization manifested in Plaintiff being removed from his position at the Student Center and reassigned to an outdoor position as part of a group reenacting historical events on campus. Plaintiff did not enjoy or feel comfortable in this position. Moreover, it was not medically safe for him to be out in the sun for long periods of time, as the position required.

56.     As a result of the persistent harassment and assault, Plaintiff's fear and anxiety limited his ability to come to campus because he did not feel safe. Every time he would see a red car on campus (the color of Mr. Kmosko's car), he would become agitated and upset, thinking that Mr. Kmosko was present. Plaintiff stopped living on campus for the following summer due to similar fears.

57.     Despite a persistent pattern of harassment, the assault of Plaintiff with a knife, and official formal and informal complaints, Hocking College, by and through its administrators, failed to properly protect Plaintiff Cox.

58.     Hocking College failed to perform reasonable due diligence when hiring Mr. Kmosko and failed to adequately address and remediate his inappropriate and dangerous conduct after he was hired. Because of the actions and deliberate indifference of Dr. Young and Hocking College, Plaintiff, his family members, and other students and employees, were harmed by Mr. Kmosko.

### Retaliation by Dr. Young

59.     On October 11, 2022, Plaintiff's father, Kevin Cox, and all other Hocking College employees received an email from Hocking College News notifying them that "Nominations for Autumn 2022 graduation awards are now open." This notification invited all Hocking College employees to nominate graduating students. The email listed the awards offered, descriptions of each award, and the closing date for nominations (October 28, 2022).

60.     During the nomination period, Plaintiff was nominated for nearly every award available by several Hocking College employees including Coaches Adam Hill and Ted Egger, Cindy Dunkle, Sam Coppoletti, Jason Sturgill, Jennifer Yanity, Amy Morrison, and Mari Cox.

61.     On November 10, 2022, the voting committee met to vote on the award nominations. Kevin Cox, father of Plaintiff, was a member of the voting committee; however, he recused himself from participating in voting for any award for which Plaintiff was nominated.

62.     The voting tallies from the November 10, 2022 meeting reveal that Plaintiff received the most votes for the Inspirational Award, the Scholar Athlete Award, and the Hocking College Trustee Award, thereby winning three awards.

63.     On November 14, 2022, Kevin Cox sent an email to Stephanie DiFrancescos, an adjunct professor, and Diane Wolf, the registrar, asking them to confirm the spelling of each award recipient for the upcoming graduation ceremony so that he could submit the list to Zonez for the program printing.  The list of names identified Plaintiff as the recipient of three awards.

64.     Zonez is a printing company who Hocking College has historically hired to print the graduation programs.

65.     Kevin Cox had been in charge of facilitating the communication between Hocking College and Zonez this year and the preceding five years.

66.     According to Kevin Cox, Ms. DiFrancescos and Ms. Wolf confirmed the names and spelling verbally in response to his email.  The list of names was then submitted to Zonez to print the Autumn 2022 Commencement programs.

67.     On Friday, December 2, 2022, Plaintiff, via undersigned counsel, notified Hocking College President, Dr. Betty Young, of our representation and delivered a letter detailing the allegations of discrimination, harassment and assault against Plaintiff.

68.     On Tuesday, December 6, 2022, undersigned counsel received delivery confirmation of the letter and an appearance of counsel.

69.     On Friday, December 9, 2022, Kevin Cox arrived at Hocking College to begin setting up for the graduation ceremony the next day. As he and Coach Hill were setting up, Coach Hill reviewed the paper graduation program and noticed that Plaintiff was only listed as the recipient of one award.  **See Exhibit D, attached hereto.**

70.     However, the QR Code to view the virtual graduation program, which was printed on posters all around the school, showed the original program as it was supposed to be printed –

with Plaintiff listed as the recipient of all three awards on page 12-13.  **See Exhibit E, attached hereto.**

71.     After this inconsistency was discovered, Mr. Cox spoke with two members of the voting committee, Coach Hill and Doug Wells.  Both confirmed that Plaintiff was supposed to receive three awards.  They also stated that no one had contacted them to change any award recipients.

72.     Kevin Cox then spoke with Amy Morrison, administrative assistant to the Hocking Vice President. Kevin Cox was informed that Hannah Guada, Vice President of Student Affairs, asked Amy Morrison to call Zonez and change the award recipients to those shown on the physical paper program, taking two awards away from Plaintiff.

73.     Hocking College does not have a policy to only grant one graduation award per student.

74.     On Saturday, December 10, 2022, Hocking College hosted the Autumn 2022 graduation.  Plaintiff was a member of the graduating class and participated in the ceremony. Plaintiff was awarded the Inspirational Award, but not the other two awards he was selected to receive.

75.     The student who received the Trustee Award in Plaintiff's place was not an original nominee.

76.      On Tuesday, January 10, 2023, undersigned counsel submitted an updated notice of allegations, including this retaliation, to Hocking College, through its counsel.

77.     Plaintiff's parents, Mari and Kevin Cox, were both employees of Hocking College at the time. On the same date, January 10, 2023, Mari and Kevin Cox and their supervisors received an email from Hocking College Director of Human Resources, Chrystal Marcum, stating

that the school had received reports about Plaintiff interrupting the workday of various persons following the return from winter break.  Further, Ms. Marcum attached the Hocking College Policy 2.08 regarding "Children on Campus." **See EXHIBIT F, attached hereto**

78.     Plaintiff is a former student and alumnus of Hocking College; Plaintiff is not a child. He was not unaccompanied at any time while on campus – he was, at all times, with his older brother, Zane, also an alumnus of Hocking College.

79.     There are no previous complaints about Plaintiff on campus.

80.     In further retaliation for their complaints made on behalf of Plaintiff, Kevin and Mari Cox were instructed by Hocking College that they would need to use their vacation time in order to attend the criminal trial of Mr. Kmosko, for which they were both subpoenaed to testify.

### Plaintiff's Damages

81.     As a result of the events alleged herein, Plaintiff has suffered and continues to suffer from nightmares, anxiety, difficulty sleeping, increased fear and anxiety on campus and when he sees cars similar to the one driven by Mr. Kmosko, reduction in social activities he once enjoyed, and increased need for therapeutic intervention.

82.     Plaintiff's therapist has noted a marked and persistent change in Plaintiff's affect, demeanor, and anxiety levels that dates back to the events alleged herein.

83.     The distress that Plaintiff suffered and continues to suffer from as a result of the trauma he endured will affect him emotionally and psychologically for the rest of this life.

84.     Plaintiff's employment at Hocking College was negatively impacted by the events alleged herein as his resulting emotional distress made his continued employment impossible, resulting in lost wages.

85.     The impact of traumatic experiences on individuals with Down Syndrome ("DS") is more acute and damaging when compared to the average individual.  "It seems DS patients react to stress in a similar manner normal persons react to a very intense stress, and thereafter develop a state very much alike post-traumatic stress disorders."[1]

86.     According to Dennis McGuire, PhD, people with Down Syndrome experience trauma and relive it differently and more intensely. He has found that when people with Down Syndrome remember trauma, they can relive as if it were happening all over again.[2]

87.     Dr. Young and the Board, by and through its administrators, acted with extreme recklessness and callous indifference in failing to protect Plaintiff's rights and retaliating against him for attempting to enforce those rights.

### Relevant Hocking College Policies & Board Failures

88.     Upon information and belief, any and all employees hired by Hocking College are provided with the Hocking College Employee Handbook and must acknowledge receipt and agreement to adhere to guidelines contained therein.

89.     Mr. Kmosko signed such an acknowledgement upon his hiring at Hocking College.

90.     The Board published, in relevant part, the following policies in its employee handbook:

    a.   Workplace Harassment and Civility Policy

       Hocking College maintains a policy against any form of workplace harassment. All forms of harassment are strictly prohibited. This includes harassing, offensive, threatening or violent behavior by employees or non-employees (vendors, job applicants, students, visitors or spouses) against self, others, college property or on college premises. The policy applies to all persons employed by or under contract

---

[1] https://www.sciencedirect.com/science/article/pii/S2352289521000138
[2] https://www.globaldownsyndrome.org/behavioral-expert-key-advice/

employment with the college. Each department, vice president, director, dean, manager, supervisor and employee is responsible for keeping the workplace free of harassing, offensive, threatening or violent behavior.

Definitions:
- ▪ Any verbal, non-verbal or physical conduct designed to annoy, intimidate, threaten or unlawfully coerce another; and/or
- ▪ Any conduct, which creates an intimidating, hostile or offensive working environment

b.  Workplace Violence

Violence or threats of violence have no place in our business…Neither threats of violence nor fighting will be tolerated…Employees are expected to immediately report to their supervisor, Campus Police or Human Resources, any violation of this policy. Any employee found threatening another employee or fighting will be subject to disciplinary action, up to and including termination.

c.  Conflict of Interest

A conflict of interest exists if financial interests or other opportunities for personal benefit may exert a substantial and improper influence upon an employee's professional judgment in exercising any college duty or responsibility. Staff shall not use their positions to secure anything of value, financial gain or personal benefit that would not ordinarily accrue to them in the performance of their official duties.

d.  Rules of Conduct and Progressive Disciplinary Procedure

Class I: An employee who engages in any of the following misconduct shall be subject to immediate disciplinary suspension or dismissal from employment: …2. Threatening, attempting or doing bodily harm to another person on the institution's property, …4. Engaging in any conduct, while on the institution's property or on paid time, which constitutes a crime (felony or misdemeanor) under the laws of Ohio or under the laws of the place where the conduct occurred; … 7. Engaging in other employment misconduct, which is generally deemed to be inexcusable in nature. NOTE: Disciplinary suspension and dismissals from employment shall be invoked only with the concurrence of the President or his designee.

All disciplinary action will be documented in the employee's personnel file.

e.  Retaliation

No retaliatory measure will be taken against any employee who complains of sexual harassment. Likewise, no retaliatory actions will be taken against any individual

who assists or cooperates with the college in the investigation of sexual harassment complaints.

Any person found to have engaged in retaliatory conduct will be subject to disciplinary action.

91.     As detailed in the preceding paragraphs, Mr. Kmosko engaged in harassing, offensive, threatening and violent behavior towards Plaintiff.  Mr. Kmosko's conduct included verbal, non-verbal, and physical conduct designed to annoy, intimidate, threaten Plaintiff.  This conduct created an intimidating, hostile or offensive working environment.  All of this conduct constitutes workplace harassment and workplace violence as defined by the Hocking College Employee Handbook and state and federal law.

92.     Plaintiff trusted that Dr. Young, the Board, and other Hocking College administrators would comply with all applicable state and federal laws as well as custom, policy, and practice in their own handbook that exist to keep students safe.

93.     As detailed in the preceding paragraphs, Dr. Young agreed to hire Mr. Kmosko without performing a background check or following the typical hiring protocols utilized by the human resources department.  Her decisions surrounding Mr. Kmosko's hiring were improperly influenced by her articulated need to do a favor for one of the college's trustees, which constitutes a conflict of interest in violation of the Hocking College Employee Handbook.

94.     Dr. Young and other Hocking College administrators failed to require a background check on Mr. Kmosko and failed to adequately address and investigate complaints of inappropriate harassment of Plaintiff and other similarly situated student-employees.  Such omissions and failures rendered Plaintiff and other students and employees more vulnerable to abusive harassment and potential physical violence.

95.     As detailed in the preceding paragraphs, Dr. Young stripped Plaintiff of two graduation awards he was meant to receive after he reported Mr. Kmoskos' misconduct and the failures of Hocking College, which constitutes retaliation in violation of the Hocking College Employee Handbook and state and federal law.

96.     Dr. Young and other Hocking College administrators' blatant and egregious retaliation against Plaintiff, a graduating student athlete with Down Syndrome, is evident from the timeline of events that led to Hocking College taking two of his awards away the day before his graduation.

97.     Upon information and belief, Dr. Young owns at least one rental property in the area surrounding Hocking College.

98.     Upon information and belief, Dr. Young leased one of her rental properties to the Hocking College Chief of Police, Tiffany Tims.

99.     The formation of a landlord-tenant relationship between Dr. Young and Chief Tims constitutes a clear conflict of interest as Dr. Young obtained a financial benefit as well as a position of power over the chief of police with this landlord-tenant relationship.  Such a relationship certainly had the potential to improperly influence both Dr. Young's and Chief Tims' professional judgment in exercising their professional duties and responsibilities.  Moreover, the delayed response to Plaintiff's assault complaint against Mr. Kmosko may have been related to this conflict of interest.

## CLAIMS FOR RELIEF

## COUNT I – Disability Discrimination Under Americans with Disabilities Act
### (42 U.S.C. §12131 et seq.)

100.   Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

101.   Hocking College receives Federal funding and is therefore subject to Title II of the ADA.

102.   Plaintiff was and is a qualified individual with a disability within the definition of the ADA.

103.   Plaintiff requests all available relief under Title II of the ADA, including, but not limited to compensatory damages for mental anguish, punitive damages, and attorney's fees.

104.   The ADA prohibits discrimination in all employment practices against "qualified individuals with disabilities."

105.   Plaintiff was discriminated against on the basis of his disability by Defendant Mr. Kmosko on several occasions during his employment at Hocking College.  Defendant Mr. Kmosko verbally harassed him using derogatory terms such as "retard," initiated unwanted physical contact, took Plaintiff's property without permission, threatened Plaintiff, and physically assaulted him with a knife.

106.   Plaintiff was also discriminated against on the basis of his disability by Defendant Dr. Young when he was demoted to a lesser quality employment position that placed his health at risk following his reports of discriminatory harassment by Defendant Mr. Kmosko.

107.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to mental and emotional distress, humiliation and embarrassment, and lost earnings, among other civil damages.

108.    Plaintiff is entitled to damages for the harm he suffered as detailed in the preceding paragraphs, including attorney's fees.

## COUNT II –Disability Retaliation in Violation of the Americans with Disabilities Act
### (42 U.S.C. §12131 et seq.)

109.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

110.    Plaintiff seeks declaratory, injunctive and civil damages pursuant to Count II.

111.    Plaintiff engaged in an activity protected under the ADA when he reported the discriminatory conduct of Mr. Kmosko to the school administration and when he, though counsel, submitted a letter to Dr. Young asserting various legal claims related to the discrimination and harassment he suffered.

112.    Defendant Dr. Young and the Board had knowledge of Plaintiff's disability and his complaints of discriminatory harassment and assault by Defendant Mr. Kmosko.

113.    Defendant Dr. Young took adverse and retaliatory action against Plaintiff on several occasions.

114.    When Plaintiff reported the discriminatory harassment by Mr. Kmosko, Plaintiff was reassigned to a less desirable position that included working long hours outdoors in the sun. Plaintiff's disability renders him more sensitive to heat stroke and related health problems. Hocking College was aware of these health risks related to his disability.

115.   After Dr. Young received Plaintiff's letter notifying her of potential legal action on December 2, 2022, Plaintiff was stripped of two graduation awards he had rightfully earned and was supposed to receive at the fall 2022 commencement ceremony.

116.   There is a causal connection between Plaintiff's protected reporting of discrimination and Defendant Dr. Young and the Hocking College administration's adverse actions towards Plaintiff.

117.   An employee in the administrative office informed Plaintiff's father, Kevin Cox, that she was instructed to call the printer and have the programs changed at the last minute to give two of Caden's awards to different students.

118.   Retaliation is the only plausible reason for the surreptitious and punitive removal of Plaintiff's graduation awards days before the graduation ceremony was to take place.  This is evidenced by the physical graduation program identifying students other than Plaintiff as the awards recipient, but the virtual program and even the QR code on the printed programs identifying Caden as the recipient of those awards.

119.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to mental and emotional distress, humiliation and embarrassment, and lost earnings, among other civil damages.

120.   Plaintiff is entitled to damages for the harm he suffered as detailed in the preceding paragraphs, including attorney's fees.

**COUNT III – Violation of Section 504 of the Rehabilitation Act of 1973**
**(29 U.S.C. § 794 et seq.)**

121.   Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

122.   Section 504 of the Rehabilitation Act states that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under" any program or activity that either receives Federal financial assistance.

123.   Hocking College receives Federal financial assistance and is therefore subject to the requirements of Section 504.

124.   Plaintiff was and is a qualified individual with a disability within the definition of Section 504 of the Rehabilitation Act.

125.   Plaintiff was subjected to discrimination on the basis of his disability by Defendant Mr. Kmosko on several occasions during his employment at Hocking College.  Defendant Mr. Kmosko verbally harassed him using derogatory terms such as "retard," initiated unwanted physical contact, took Plaintiff's property without permission, threatened Plaintiff, and physically assaulted him with a knife.

126.   Plaintiff was also subjected to discrimination and denied the benefits of his employment on the basis of his disability by Defendant Dr. Young when he was demoted to a lesser quality employment position that placed his health at risk following his reports of discriminatory harassment by Defendant Mr. Kmosko.

127.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to mental and emotional distress, humiliation and embarrassment, and lost earnings, among other civil damages.

128. Plaintiff requests all available relief under Section 504 of the Rehabilitation Act, including, but not limited to compensatory damages for mental anguish, punitive damages, and attorney's fees.

## COUNT IV – Disability Retaliation in Violation of Section 504 of the Rehab. Act of 1973 (29 U.S.C. §794 et seq.)

129. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

130. Plaintiff seeks declaratory, injunctive and civil damages pursuant to Count IV.

131. Defendant Hocking College receives federal financial assistance.

132. Plaintiff is an "individual with a disability" as defined by 29 U.S.C. §794.

133. Plaintiff, by reason of his disability, or alternatively in retaliation for reporting unlawful discrimination, has been excluded from participation in and/or denied the benefits of the services, programs, or activities of Defendant Hocking College. Plaintiff is and was qualified to continue his student-employment in the student center and was qualified to receive the two graduation awards that were stripped from him.

134. Retaliation is the only plausible reason for the surreptitious and punitive removal of Plaintiff's graduation awards days before the graduation ceremony was to take place.

135. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to mental and emotional distress, humiliation and embarrassment, and lost earnings, among other civil damages.

136. Plaintiff is entitled to damages for the harm he suffered as detailed in the preceding paragraphs, including attorney's fees.

### COUNT V - Supervisory Liability Against Defendants Dr. Young and the Board
(via 42 U.S.C. §1983)

137.   Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

138.   Supervisory liability "is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987).

139.   Defendants Dr. Young and the Board were aware of the risk Defendant Mr. Kmosko posed to his subordinate employees presumably before his hiring as evidenced by Dr. Young's statement that she needed to make his hiring work as a favor to a Board member and that she flatly refused to allow human resources to conduct a customary background check.

140.   Defendant Dr. Young was also aware of the discriminatory and inappropriate verbal and physical harassment Defendant Kmosko had persistently engaged in towards Plaintiff and other employees.

141.   Defendant Dr. Young's response to such knowledge was shockingly inadequate, demonstrating deliberate indifference to, or even more egregiously, tacit authorization of the alleged offensive behaviors.

142.   There exists an affirmative causal link between Defendants Dr. Young and Board's hiring and continued employment of Defendant Mr. Kmosko and the particular injuries suffered by Plaintiff.

143.   Defendants Dr. Young and the Board's hiring and continued employment of Defendant Mr. Kmosko were also the proximate cause of Plaintiff's injuries and damages.

144.    Defendants Dr. Young and the Board are responsible for the management and control of Hocking College.

145.    As a direct result of the actions and conduct of Dr. Young and the Board, Plaintiff suffered and continues to suffer extreme emotional trauma and suffering as evidenced by heightened anxiety, fear, insomnia, nightmares, and depression.

146.    Plaintiff is entitled to damages for the harm he suffered as detailed in the preceding paragraphs, including attorney's fees.

### Count VI –Violation of Right to Bodily Integrity Under the Fourth and Fourteenth Amendments to the United States Constitution, Against All Defendants
### (via 42 U.S.C. §1983)

147.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein

148.    At all times relevant herein Plaintiff had a right to bodily integrity which is protected by the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

149.    The May 12, 2022 incident involving Plaintiff's physical confinement and assault with a deadly weapon in the Hocking College Student Center bathroom by Mr. Kmosko constitutes a deprivation of Plaintiff's right to bodily integrity protected by the Fourth and Fourteenth Amendments to the United States Constitution.

150.    The Defendant Dr. Young and Defendant Board, by and through its authorized officials, including, but not limited to Defendant Dr. Young, and other unnamed Hocking College administrators failed to adhere to its adopted custom and policy of conducting background checks on any and all potential new hires.

151. Hocking College's Human Resources Department, which typically handled hiring of new employees, had an official custom and practice of conducting a background check on all potential hires.

152. Mr. Kmosko hiring was facilitated by Dr. Young's office, which was a departure from Hocking's typical practice. Moreover, when a background check was requested and recommended by the director of human resources directly to Dr. Young, she directly and explicitly refused to agree to a background check of Mr. Kmosko. Dr. Young stated that she had to make Mr. Kmosko's hire work as a favor to one of the Hocking College Board of Trustees.

153. Dr. Young, and by association the Board, failed to adhere to Hocking College custom and policy of conducting background checks, which proximately caused the deprivation of Plaintiff's rights. Specifically, if a background check would have been conducted, it would have revealed a significant history of violence, and Mr. Kmosko likely would not have been hired.

154. Dr. Young, and by association, the Board, also violated official Hocking College policy regarding conflicts of interest. Specifically, Dr. Young clearly had a conflict of interest in the hiring of Mr. Kmosko as a Board member was exerting improper influence over her professional judgment in exercise of her professional duties.

155. Dr. Young, and by association the Board, failed to adhere to Hocking College official policy barring conflicts of interest that would have improper influence on professional judgment, which constituted an omission of the college's official policy and proximately caused the deprivation of Plaintiff's rights. Specifically, Dr. Young's forced hire of Mr. Kmosko as a favor to a trustee. If Mr. Kmosko had gone through the official hiring process in the human resources department, he would not have been hired given his significant history of violence and would never have come into contact with Plaintiff.

156.    The Board and Dr. Young's failure to adhere to its own policies, practices, and customs constituted omissions that manifest deliberate indifference to the rights of Plaintiff.  The Board and Dr. Young's omission of these policies, practices, and customs, in part, proximately caused the deprivation of and infringement upon Plaintiff's constitutional rights

157.    The Defendant Board and Dr. Young had an affirmative duty to protect their students from harm when there existed a state-created danger; a violation of this duty under these circumstances is actionable under 42 U.S.C. §1983

158.    Defendant Board, by and through its administrator, Defendant Dr. Young, had constructive knowledge of Mr. Kmosko's violent tendencies at the time of his hiring.  Moreover, they had actual knowledge of Mr. Kmosko's inappropriate harassment and threatening behavior towards Plaintiff and other similarly-situated employees during his employment.  As such, the harm Mr. Kmosko caused to Plaintiff was foreseeable and fairly direct to defendants.

159.    The failure of the Defendant Board, by and through Defendant Dr. Young, to insist upon the hiring of Mr. Kmosko without a background check, with at least constructive knowledge of his history of violence, presents a degree of culpability that shocks the conscience given that Hocking College employees are interacting with young students and employees such as Plaintiff on a day-to-day basis.

160.    As a student-employee with Down Syndrome, Plaintiff was particularly vulnerable to the harm brought about by Mr. Kmosko's hiring.  Defendants employed Mr. Kmosko as Plaintiff's direct supervisor, placing him directly in the line of fire for Mr. Kmosko's abusive and discriminatory harassment.

161.    As a proximate result of Defendants' deliberate indifference to its own custom and policy as detailed above, Plaintiff suffered a violation of his constitutionally protected Fourth and

Fourteenth Amendment rights. In turn, the omission and violation by the Defendants proximately caused Plaintiff significant emotional and psychological trauma, which is actionable under 42 U.S.C. §1983.

162.   By hiring and employing Mr. Kmosko without utilizing proper hiring customs and procedures and allowing his inappropriate harassment to persist on campus as an employee, Defendants, Dr. Young, and the Board, affirmatively used their authority in such a way that it created the danger for Plaintiff which led to his emotional and psychological trauma. Such conduct by Defendants rendered Plaintiff more vulnerable to the harm he suffered than had they not acted at all, for had they not acted, Mr. Kmosko would not have been hired.

163.   As a result of the deprivation of Plaintiff's constitutional rights, Plaintiff suffered and continues to suffer severe emotional and psychological trauma. Plaintiff is entitled to recover for all damages proximately resulting from the deprivation of his constitutional rights as detailed above.

164.   As a result of the deprivation of Plaintiff's constitutional rights and resulting emotional and psychological trauma, Plaintiff is seeking special damages in an amount to be proven at trial.

165.   Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to recover all reasonable attorney's fees and costs expended in this action.

## COUNT VII – Unlawful Disability Discrimination Against Board and Dr. Young
### (Ohio Revised Code §4112.022)

166.   Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

167.   Hocking College is an "educational institution" as defined by O.R.C. §4112.022.

168.   Per O.R.C. §4112.022 it is unlawful discriminatory practice for any educational institution to discriminate against any individual on account of any disability… (E) in awarding of grades or granting of certificates, diplomas, or degrees offered by the institution.

169.   Plaintiff has Down Syndrome and is an "individual with a disability."

170.   Defendant Hocking College failed to adequately protect Plaintiff from unlawful discrimination and harassment, and further retaliated against Plaintiff for reporting such harassment and discrimination, as detailed herein.

171.   Defendant Dr. Young engaged in unlawful disability discrimination against Plaintiff in violation of O.R.C. §4112.022(E) when she instructed Hocking College administrators to strip Plaintiff of two awards he was to be given at the fall 2022 commencement ceremony.

172.   Upon information and belief, Defendant Dr. Young took these two awards away from Plaintiff and removed his name from the physical graduation program soon after she received a letter from Plaintiff's counsel outlining various potential legal claims, including disability discrimination, against her and the Hocking College Board of Trustees.

173.   As a result of Dr. Young's egregious and intentional acts, Plaintiff was discriminated against on the basis of his disability.

174.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered mental and emotional distress as well as humiliation and embarrassment, among other civil damages.

175.   Plaintiff is entitled to damages for the harm he suffered as detailed in the preceding paragraphs, including attorney's fees.

## COUNT VIII – Intentional Infliction of Emotional Distress Against Defendants Dr. Young and Matthew Kmosko

176.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

177.    The prima facie elements of a claim for intentional or reckless infliction of emotional distress are: (1) the defendant intended to or recklessly caused the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994).  Reckless conduct is defined as "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990).

178.    Defendants Mr. Kmosko and Dr. Young recklessly caused Plaintiff's emotional distress.

179.    Defendant Mr. Kmosko intentionally harassed, abused, and assaulted Plaintiff.  Any reasonable person in Defendant Mr. Kmosko's position would have knowledge that such misconduct would inflict serious emotional damage upon Plaintiff.

180.    Defendant Mr. Kmosko's conduct was objectively extreme and outrageous and completely outside the bounds of human decency.

181.    As a direct and proximate result of Defendant Mr. Kmosko's egregious conduct inflicted upon Plaintiff, he has suffered and continue to suffer significant emotional distress, including, but not limited to anxiety, depression, nightmares, insomnia, intense fear and stress in and around campus, and increased agitation.

182.   Defendant Dr. Young either knew or consciously disregarded Defendant Mr. Kmosko's proclivity for abusive behavior at the time he was hired, and certainly knew of his abusive harassment when Plaintiff and other Hocking College employees reported it.

183.   This conscious disregard and knowledge of the risk of harm Defendant Mr. Kmosko posed to Plaintiff and others under his supervision is deeply unreasonable and goes far beyond mere negligence.

184.   This conscious disregard by Defendant Dr. Young, coupled with the recklessly indifferent response to reported harassment and egregious retaliation for reporting such harassment was extreme and outrageous.

185.   Defendant Dr. Young was the proximate cause of Plaintiff's mental and emotional injuries that resulted from Defendant Mr. Kmosko's harassment and abuse and Defendants' own retaliatory misconduct.

186.   The injuries inflicted by the above-named defendants were of a nature that no reasonable person in Plaintiff's position should be expected to endure.

187.   Plaintiff is entitled to damages for the emotional harm he suffered as detailed in the preceding paragraphs.

## **COUNT IX – Assault Against Defendant Matthew Kmosko**

188.   Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

189.   Defendant Mr. Kmosko intentionally caused harm to Plaintiff on May 12, 2022 when he cornered him in a Hocking College bathroom and threatened him with a knife.

190.   Defendant Mr. Kmosko was charged and found guilty of assault in Perry County Municipal Court as a result of the May 12, 2022 incident.

191.   Defendant Mr. Kmosko's intentional assault of Plaintiff caused Plaintiff to suffer significant emotional damage that continues to date, including, but not limited to, anxiety, depression, nightmares, insomnia, and fear.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. A jury trial for all issues pursuant to F.R.C.P. 38(b);

2. That each Defendant be required to answer within the time prescribed by law;

3. A declaration that the acts and conduct of all Defendants constitute violations of Plaintiff's constitutional, statutory, and common-law rights;

4. An award to Plaintiff against all Defendants, jointly and severally, an appropriate amount of compensatory and punitive damages;

5. Equitable relief forcing Defendants to enact and follow policies to protect students in attendance from harassment, abuse, and discriminatory conduct.

6. An award to Plaintiff against all Defendants, jointly and severally, reimbursement for appropriate court costs and reasonable attorney fees;

7. An award to Plaintiff for any other relief the court deems appropriate.

Respectfully submitted,

*/s/ Mark A. Weiker*
Mark. A. Weiker (0086413)
Amy N. Solaro (0100707)
ALBEIT WEIKER, L.L.P.
262 South 3rd Street
Columbus, Ohio 43215
T: (614) 745-2001
F: (614) 417-5081
E: mark@awlawohio.com
E: amy@awlawohio.com
*Counsel for Plaintiff*

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

*<u>/s/ Mark A. Weiker</u>*
Mark. A. Weiker (0086413)
Amy N. Solaro (0100707)